Our last case this morning is Killeen v. Michael Spector, appearing on behalf of the Petitioner, John Killeen. First of all, I have to say it's nice to be back here for my biannual visit to the Court on this case. Thank you very much. We hope this is the last one. I certainly hope so, too, Your Honor. Basically, I just have to say as a preface that I've been practicing federal employment law for 35 years, and I have never, ever litigated an attorney's fees case. And there have been a number of times when I haven't received full fees or I haven't received fees. But this case just seemed to me so egregious for what the Board did in cutting the fees in half, just directly in contradiction to Hensley v. Eckerhart, that I just had to bring this case on behalf of my client, and that's why I'm here. There are a number of things that militate against the Board's decision in this case. I think it ranks up with their decision holding initially that there was race judicata in this, a jurisdictional issue, when it wasn't race judicata. And I don't want to put the Board down, but I just think they were wrong about that, and they were wrong about what they did with the fees here. And as far as the issue with the, you know, whether the Court helped, whether the Board properly or improperly closed the record or held it open or accepted a document from OPM that they should have not accepted, my only point there was that that particular issue was that they should have just, even under their own regulations and their own case law, should have at least let us know that they were going to accept it. There was a telephonic conference. I couldn't get the transcription of that, but it's not been contradicted. And what the judge said was, well, you know, they definitely had until the 18th of June to submit something in opposition to the fee petition. They didn't submit anything. And when they didn't submit anything by the 18th of June, we had the phone conference, I believe it was on the 24th. It was the Friday. And then sometime over the weekend, the judge during the phone conference, the administrative judge, said, well, you didn't submit anything. Why didn't you submit anything? And they said, well, we just didn't submit anything. The judge said, well, I don't know if I'm going to accept anything. The time's gone. You should have accepted something. But if you don't, if you do submit something, I may look at it or I may not. And my position was it was, it was a very, I think it's included in the appendix. It's very, you know, a letter of submission. And it was received that following week. And I was waiting for the judge to say, okay, I'm going to look at it. You can respond to it. But the record had closed when we ended that phone conversation. That was it. Another, you know, statement, I think that all the cases that I, I think I've dealt with them in our reply brief, that OPM has put a number of cases in there, supposedly, you know, supporting their position. However, you know, my reading of them, and I think I point this out in the reply brief, is that as far as, you know, this court's ruling in Hubbard, this court's ruling in Keeley, Hensley v. Eckerhart, this court has uniformly held that you shouldn't take a mathematical view on dividing or reducing fees when it's basically the same issue. There was really only one issue on appeal that we had to come back to the court because, you know, let's face it, the annuity wasn't calculated correctly the first time. Judge Geiser, your first opinion back in 2004, you know, sent this back and said, please recalculate, and they didn't do it correctly. We waited a whole year. Time flies when you're having fun, right? Excuse me. It's 2010. It's only been six years. It's 2010. When I started this case, I honestly did not have a gray hair on my head. I really didn't. And it's like... Now, you can't say we gave you the whole head of gray hair. Somebody else contributed to this. No, I also have... Have you had any other cases? My 17-year-old daughter is going to college next year, and, you know, that's some more gray hairs, but it's fine. Was there any quarrel over the billing amounts? Not a bit. In fact, the judge found that fees were warranted... He thought $250,000 was a fair number? Yes. I mean, she... Excuse me, which number? I was wondering if you would catch that. $250,000. Did I put an extra zero? They're pretty modest fees, really, for all the work that was done here, I have to say. I thought it was a misprint. It's really only $25,000? Is that what your bill was? The bill for the work that was done in the Merit Systems Protection Board on the remap came to, I think, $30,000. $30,000. And it was really, you know, very reasonable, and then they ended up cutting it in half. And that's why I'm here. I just think it was improper. And it was improper according to the law. I'm not just saying it's improper because I didn't like it. Should we hear from Ms. Hossford? Yes, yes. Ms. Hossford, you didn't calculate the fees right. We asked you to do it over again. He got an increased annuity. Why did he cut his fees? May it please the Court. The Court should affirm the Board's decision below because the Board acted within the broad discretion that's given by the statute to reduce a fee. But there's a cliff. There's a cliff over here, and the cliff is arbitrary and capricious. And this case does not rise to the level of arbitrary and capricious. Well, let's move on. The Eckerhart decision is here. Why not? He wins. He wins. Why doesn't he get his fees? Because he did not receive all the results he sought. He lost $126, whatever the two peculiar differences were in his actual calculation versus what he ended up getting in the final analysis. I think it was more like, I believe it was about $1,000 a year. $1,000. But what he was seeking, Mr. Killeen essentially got about 40% of what he was seeking. Now, I know that there are proportionality cases out there, Riviera v. Riverside, and those Supreme Court cases that say you shouldn't look at proportion. But here, the Board did not look at proportionality, although 40% could have been a reasonable amount. The administrative judge, who, by the way, had ruled on the merits in favor of Mr. Killeen when he was going through the Board, said that 50% was fair because it basically measured the issues that were before this Court. They were basically equal amounts. The issue before this Court was whether OPM could figure out what the statute meant. And it took OPM umpteen years and two appeals to this Court before it finally got its strength. And you call that not a win? No, it was definitely a win. That's why Mr. Killeen was a prevailing party. End of case. No, this is a 7701 case. This is not an EJ case where the Court shall award fees unless the government can show that it's substantially justified. This is a 7701G case where the Board may award fees if it seems to be in the interest of justice. And here, the Board, when it made its interest of justice analysis, said that the government knew or should have known that its calculation for post-1986 should have taken into account Mr. Killeen's total service. Were there any objections by the government as to the fees? You had an opportunity to object to the fees. We objected. There was no objection to the fees. No, we did object. We objected during the status conference. After the time period had run. Well, it was after the time period for filing a response, but not before the record had closed. There's no evidence that the acknowledgement order that the Board issued, which is at pages 79 through 81 of the joint appendix, shows that the record closed on June 28th. The government filed its objections on June 26th. Now, Mr. Killeen's counsel did not read them until June 29th, but they were filed. And this court's decision in Shuker, in concert with a whole series of Board decisions, showed that it was Mr. Killeen's counsel's responsibility to preserve his right to file a rebuttal. And he did not do so. There were 52 days between the filing of the government's response to the fee petition and the administrative judge's issuance of her initial decision. And Mr. Killeen's counsel admits that, when they had the status conference, that the judge said, I may consider this. Yet, when the government filed it, Mr. Killeen's counsel did not respond. Now, getting back to the whole issue of whether or not this case is consistent with Hensley v. Eckerhart. Hensley v. Eckerhart clearly holds that in cases where related claims are brought, if a claimant is not successful on all of the claims, then a reduction in fees is appropriate. Here, Mr. Killeen claimed all of his fees, and the Board said, consistent with Hensley, that that's not appropriate in light of the fact that he did not receive all the relief requested. In fact, this court's decision in Killeen 2 makes it clear that there were two issues, one of which the government prevailed. The Hensley case does talk about limited success, but this is not really limited success in the sense that he does get a recalculation according to a new formula that hadn't been proposed by any of the parties, and it takes him more than half the way towards what he originally asked for, right? I mean, I guess what I'm asking, let me put it more succinctly, what is limited success? Well, in Hensley It isn't $1 less than what he asked for. No, but here, the fact that Mr. Killeen only got 40% of the additional annuity that he was asking for is relevant. Here, that he brought two primary issues to this court in Killeen 2 and lost on one is relevant. If we count the estoppel argument, he wins two out of three. That's another issue. The estoppel argument was not presented before the board. The board raised that sua sponte at the very last moment. That had to be litigated before this court, and this court awarded Mr. Killeen all of his fees for the proceedings before it. So that collateral estoppel issue was properly not considered by the board in reviewing Mr. Killeen's fee petition for the proceedings before it. Mr. Killeen makes a series of arguments to distinguish Hensley, all of which don't apply. First, he claims that this was a proportionality case when it wasn't, because then he would have only gotten 40%. Second, he says he got excellent results, which is not true in light of the fact that he did not get all the additional annuity he was asking for. And the government had to go through quite a bit of litigation itself to show that its pre-1986 calculation was correct. In fact, this court had not even addressed the pre-1986 calculation in Killeen 1. It had not said that the government had erred in that aspect of its annuity calculation, yet Mr. Killeen pursued it all the way back to this court again and lost. Will others besides Mr. Killeen have the benefit of this new knowledge by OPM? Certain others will have the benefit of the new knowledge by OPM, but others will be—the knowledge will be to their detriment, because if employees had part-time service prior to 1986, then the ruling that Mr. Killeen obtained will actually hurt them. Can we expect to have them up here before us at some point? Let's hope not, because I think OPM is now doing the calculation the way the court has instructed it to in Killeen 2. Based on Killeen 2? That's correct. So that at least is a benefit to others besides Mr. Killeen? Yes, but then again, others will not be benefited because they will now receive less annuity. But there are some people who will benefit because of Mr. Killeen's new calculations requirement. Certain people will benefit. And if the others don't, then the government is saving money, which they could give for attorney's fees. Well, obviously I would respectfully disagree with that reasoning. I thought you might. With respect to Mr. Killeen's argument that there was one claim and not two, I've already addressed that. Clearly there were two claims brought before this court. He also claimed in his brief that his claims were alternative, and that's not the case. They would have been alternative if, like in one of the Winstar cases, there was a restitution claim and an expectancy damages claim, and you can't get both, so you get one. That's alternative. This was not alternative. He was seeking both, not just part. So on the case law, it's clear that the board was acting within its very broad discretion in reducing the fee. And in fact, it's Mr. Killeen's burden to show that it was not within the board's discretion. Mr. Killeen has not suggested any other outcome or fee except for the full amount of the fee, which, in light of Hensley and the fact that he did not achieve all the success that he sought, would not be appropriate. Finally, with respect to Mr. Killeen's argument in his brief that this court's decision on the EJAP petition is law of the case, that's just not correct as a matter of law. As I said, 7701G has a different standard, a different burden, and therefore the court cannot rely on its prior decision to award all fees in this case. What would you have wanted him to do, do you think, or let me put it impersonally, what do you think the board would have wanted him to do in order to be entitled to the full value of his legal services? If he had prevailed on the issue before this court regarding his pre-1986 annuity, had he been awarded an additional annuity of his pre-1986 service, contrary to the way OPM calculated it, then it would have been a much more difficult burden for the government to show that he wasn't, that all of his fees were not in the interest of justice. So you would have wanted a 100% win to get a 100% fee? Well, not a 100% win, because let's say that the court agreed on both legal issues, but as we know, the court did the calculation itself, gave him $100 less on one than he said it should have been, then that would have been a much closer case from the government's perspective. That's not what happened here. The government had a flat-out win on the pre-1986 annuity, and that's what the board took into account, or the administrative judge took into account when she reduced the fees, and that was within her discretion. So unless the court has other questions, I would ask that the court... Thank you, Ms. Hofstra. Mr. Spector, what makes this arbitrary and capricious? They have a lot of discretion in this area. They do have a lot of discretion, Your Honor, but however, in this case, what they did was they parsed related arguments that were basically really made as one argument that somehow got turned into an alternative argument. Mr. Killeen really said, what we want you to do is to do the annuity in a way that takes into effect his total service throughout pre-1986 and post-1986. The thing that's interesting for Mr. Killeen is that he was, pre-1986, a full-time employee, and this statute, 8339P, deals with part-time employees. So his position was, well, since he was a full-time employee during that time, he really shouldn't change his annuity up to that point. But the board did. What if he had just brought the one argument, the total service argument that we rolled in his favor, and hadn't brought the other argument that would have, you know, would he then have been, you know, 100% instead of, and what that says then, that's an abuse of discretion on the board's part, to answer your question, because what the case law holds is you shouldn't be penalized for bringing alternative arguments. You know, the one statement that they made is that some people have benefited and some people have not benefited from this. And they admit that people have benefited, many people, I believe. But, you know, the people that haven't benefited, maybe the real benefit of Killeen 2, and I don't like to see anybody, you know, hurt in any way, but the real benefit of Killeen 2, as you remember from Killeen 1, the purpose of Killeen 1 was there was this great hole in the law, and what a lot of federal employees, I don't know if a lot of them, but what was there to correct was, you could, for instance, work for the Postal Service, your whole career as a part-time employee for 10 hours a week or something, then decide your very last three years of employment, once you got to be 56, 70, 60, whatever, I'm going to work full-time for the last three years. Last three years you'd work full-time, you'd have a full annuity for the rest of your life. They said, well, this isn't fair. And so what Killeen 2 has done by finally putting into effect that total service provision, they finally, 20-some years later, finally 25 years later, finally put into effect, this Court's put into effect what Congress really intended. And Mr. Killeen's responsible for that. That's all. Thank you, Mr. Spector. Thank you. I think that we, you know, that it was our great appreciation that the Board did put it forward for us. Thank you, Mr. Spector. Thank you. All rise. That concludes our afternoon.